IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 9, 2001 Session

## LARRY ROBBINS v. CITY OF JOHNSON CITY, TENNESSEE

**Appeal from the Chancery Court for Washington County**
**No. 33154      Jean A. Stanley, Judge**

**FILED JULY 3, 2001**

**No. E2000-02952-COA-R3-CV**

This case involves the termination of Johnson City police officer, Larry Robbins. Dissatisfied with his department's handling of certain allegations of sexual harassment made by a secretary against officer Mike Lukianoff, Robbins authored an anonymous letter and sent it to each of the City Commissioners. The Chief of Police, who later learned of the letter, conducted an investigation. Robbins eventually admitted to writing the letter, to relating the allegations even though he had no personal knowledge of them, and to having a personal vendetta against the alleged harasser. The City terminated Robbins, primarily for conduct unbecoming an officer. Robbins appealed to the City Civil Service Commission, which upheld Robbins' termination. Robbins then appealed to the Washington County Chancery Court, which reversed the termination, but remanded for appropriate discipline. The City appeals the reversal of Robbins' termination, and Robbins appeals the remand for discipline. We find that the trial court erred in reversing the termination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

James D. Culp and James H. Epps, IV, Johnson City, Tennessee, for the appellant, City of Johnson City.

James T. Bowman and A. Scott Pratt, Johnson City, Tennessee, for the appellee, Larry Robbins.

### OPINION

### I.

For the six months preceding February, 1999, a secretary with the First Judicial District Task Force ("DTF") office was allegedly sexually harassed by Mike Lukianoff, a Johnson City police officer working in the DTF office as a liaison to the Bureau of Alcohol, Tobacco, and Firearms.

According to the secretary, the following incidents of harassment occurred: (1) Lukianoff once attempted to kiss her; (2) Lukianoff showed the secretary a nude picture of his wife on the computer; (3) Lukianoff showed the secretary a nude picture of himself on the computer; and (4) one day in February, 1999, the secretary saw Lukianoff in his office with the door open and his pants down. Other than the secretary and Lukianoff, there were no witnesses to these incidents.

On Friday, February 19, 1999, the secretary phoned Frank Peters, Director of the DTF, at home and informed him that she had seen Lukianoff in his office with the door open and his pants down. When Peters arrived at the office, Lukianoff said, in Peters' presence, something to the effect that he and the secretary had just had wild sex on the desk.

Peters reported the situation to Johnson City Chief of Police Ron Street on Monday, February 22, 1999. Street directed Peters to make an appointment for Street, Peters, and the secretary to discuss the matter.

The three of them met on Thursday, February 25, 1999. The secretary related her allegations to Street at this meeting. Upon hearing the allegations, Street encouraged the secretary to file a formal complaint. The secretary, however, did not wish to file a formal complaint, and stated that she just wanted the harassment to stop. Street informed the secretary that she could file a complaint at a later date if she changed her mind.

Street subsequently talked to Lukianoff, who denied the allegations. Street then discussed the situation with, among others, the Captain of the Internal Affairs for the Johnson City Police Department, and Ed Fennel, Johnson City's Director of Human Resources. Street and Fennel, faced with a difficult situation involving an alleged harasser who denied the harassment and an alleged victim who declined to file a complaint, decided to transfer Lukianoff from the DTF office to another building. The secretary was apparently satisfied with this resolution.

II.

The instant suit does not involve the secretary or Lukianoff. Instead, it concerns Johnson City police officer and DTF agent Larry Robbins, who was terminated for writing an anonymous letter relating to the above-mentioned alleged harassment.

The secretary, after meeting with Street, informally met with Peters and several DTF agents, including Robbins, to inform them of the allegations of harassment. The most relevant topic of discussion at this meeting concerned what the secretary told the agents about what she saw when Lukianoff was in his office with the door open and his pants down. At the hearing before the Commission, several officers were asked about what the secretary said about this incident. One agent testified simply that she said she had seen Lukianoff with his pants down. Two other agents testified that she said that she had seen him with his pants down and his penis in his hand. One agent, who had earlier given a statement to Street stating that the secretary said that Lukianoff was masturbating, testified at the hearing that he only remembered her saying that she had seen him with

his pants down and his penis in his hand. The secretary testified at the hearing that she did not recall telling them that Lukianoff was masturbating, and at least one agent specifically stated that she did not so inform them.

Peters warned the agents collectively, and the Johnson City agents, including Robbins, specifically, not to discuss the incident. Peters testified at the hearing before the Commission that he made this statement because he felt gossip concerning the incident would deter the secretary from filing a complaint should she later choose to do so. One of the Johnson City agents testified that he did not feel threatened when Peters told them that they "could face repercussions" if they discussed the matter. Robbins, however, characterized the instruction as a threat, saying that Peters told them that if they talked about it, they would lose their jobs.

On June 10, 1999, Robbins, without discussing the situation with anyone in the chain of command above Peters, authored the following letter:

> I am writing this letter to inform you of an ongoing problem at the JC Police Dept. An investigator by the name of Mike Lukinoff [sic] has done some things which have obviously been swept under the carpet. I hope you will ask about these things and see that something is done.
>
> About a year ago Mike started harassing a female secretary while he was located at the office of the Drug Task Force. He was not working for the DTF he was just using their space. He was and is employeed [sic] as an investigator. He made numerous sexual advances to the secretary, he alson [sic] brought nude pictures of himself and put them in front of her. He often tried to kiss her as she pushed him away. Once while they were in the office alone she walked by his door and caught him with his pants down masterbating [sic]. He not only spent his time doing this but most of his time was spent playing on the the [sic] internet with porno. The Dept. knew of all of this but nothing other than put him back at the police dept. was done. To my knowledge he was not even reprimanded. He continues to have access to the internet on police time.
>
> All of these things were brought to the attention of the chief and the city attorney and nothing was done.
>
> This secratary [sic] was advised that she could file suit against the sity [sic] for a six figure settlement and she still has plenty of time to file. I would hate to see the city loose [sic] alot [sic] of money since they cannot pay their employees [sic] now.

Robbins, afraid of being terminated from his job, did not sign the letter, and even wore gloves while writing it. The letter was written at the DTF office using DTF equipment, stationery, and envelopes. He sent copies of the letter to each member of the Board of Commissioners. He sent the letter to no one else.

After Street was made aware of the letter, he showed it to Peters and the secretary.[1] The secretary opined that the letter was written on a certain DTF typewriter and that it was written by Robbins. When Street first confronted Robbins about the letter, Robbins denied writing it. Later that day, however, he admitted to being its author. Street then interviewed Robbins on June 10, 1999, which interview was recorded and transcribed. During this interview, Robbins admitted that he had no personal knowledge of the allegations contained in his letter and that they were based solely on what he had heard from the secretary and from Peters. When asked why he authored the letter and sent it to the commissioners, he answered, "As a way of getting back at Mr. Lukianoff for things he's done to me," and that "[he] was hoping that something would be done to him…. Uh, for all the comments and things that are made about me personally, that he makes, regarding my work or our office. That type thing." Approximately a week later, Robbins said he wrote and sent the letter because he felt that Lukianoff had not been punished for sexually harassing the secretary.

Street initially charged Robbins with violating six provisions of police department policy, two of which were unbecoming conduct and violation of the chain of command. Ultimately, Street issued a recommendation to the City Manager and the Public Safety Director, recommending that Robbins be terminated for violation of the unbecoming conduct provision, which reads, in pertinent part, as follows:

> [Personnel] shall not be guilty of conduct unbecoming their position and shall not commit acts which would discredit the Bureau even though those acts are not specifically set forth in this code of conduct.

The City followed Street's recommendation and terminated Robbins.

Robbins appealed his termination to the Johnson City Civil Service Commission. A hearing was conducted on August 31, 1999, and September 1, 1999. The Commission unanimously upheld the City's termination of Robbins.

Robbins then appealed to the Washington County Chancery Court. The trial court made the following findings of fact:

---

[1]When the secretary learned of the letter, she filed a formal complaint against Lukianoff concerning the sexual harassment allegations. Street then referred the matter to internal affairs, which initiated an investigation. Lukianoff later resigned. Street testified at the hearing that he would have recommended Lukianoff's termination had Lukianoff not resigned.

The Court finds that [Robbins] has an absolute statutory and constitutional right to communicate with elected public officials so long as he does not make any untrue allegations concerning any job related matter to such elected public officials. The Court finds that the anonymous letter was a protected communication about a job-related matter and that the Johnson City City Commissioners are public officials as contemplated by T.C.A. § 8-50-602.[2]

The Court also finds that Officer Robbins' act in writing the letter was in great measure the basis of his termination under the incident violation of "unbecoming conduct". This the City cannot do unless Officer Robbins' allegations were untrue.[3] While the Court cannot find that every word authored by Officer Robbins was correct and precise, the Court does find that the allegations were substantially true or could reasonably have been believed to be true.

\* \* \*

Officers confirmed that Officer Frank Peters came back from his meeting with the Chief and told them that Officer Lukianoff had been moved back to the City and that the Chief sent word they should not discuss this. The Court believes it would be reasonable to take that comment in either of the two ways urged by the opposing sides. It might be reasonable to believe this was a cover up. It might be reasonable to believe the Chief simply did not want gossip to occur or that he did not want discussion to take place which might interfere with a future investigation. The fact that there was an alternative explanation does not make Officer Robbins' expressed opinion untrue since it was a reasonable impression of what had happened. Another officer testified that it was his understanding from the meeting with Frank Peters after Officer Lukianoff was moved that the officers understood that was going to be the extent of it.

The trial court reversed the Commission's decision to sustain the City's termination of Robbins, stating that "such reversal is authorized in that the rights of [Robbins] were prejudiced

---

[2] T.C.A. § 8-50-602(a) (1993) provides as follows: "No public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever."

[3] T.C.A. § 8-50-604 (1993) provides as follows: "No provision of this part shall be construed to prohibit an employer from correcting or reprimanding an employee for making untrue allegations concerning any job-related matter to an elected public official."

pursuant to T.C.A. § 4-5-322(h)(1)(4)."[4] While holding that Robbins' termination was inappropriate, the court also commented that his actions were "not above reproach," and "remand[ed] this case back to the proper authority for any further assessment of penalties."

The City now appeals the trial court's reversal of Robbins' termination, and Robbins appeals its decision to remand for the assessment of appropriate penalties.

III.

Our review of this matter is governed by T.C.A. § 27-9-114(b)(1) (2000), which provides as follows:

> Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322.

T.C.A. § 4-5-322 (1998) provides, in pertinent part, as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

---

[4] It is unclear whether the trial court's decision is based on subsections (h)(1) *and* (h)(4), (h)(1) *through* (h)(4), or some other possibility. In any event, the parties' arguments pertain primarily to subsections (h)(1), (h)(4), and (h)(5). The City also argues that the Commission's determinations were not appropriate under either subsections (h)(2) or (h)(3), but Robbins does not seriously contest this argument. Under the circumstances, we will limit our discussion to subsections (h)(1), (h)(4), and (h)(5).

> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

IV.

The City first argues that the Commission's determinations were not in violation of constitutional or statutory provisions. Robbins argues that such determinations violated the Public Employee Political Freedom Act of 1980 ("PEPFA"), found at T.C.A. § 8-50-601 (1993) *et seq.*

The PEPFA provides that

> [n]o public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever.

T.C.A. § 8-50-602(a). No public employee is to be disciplined for exercising his or her right to so communicate with an elected public official. T.C.A. § 8-50-603.

The City first contends that the letter did not concern a "job-related purpose" because Robbins had no supervisory authority or responsibility over either Lukianoff or the secretary. We find this lack of authority over his co-workers immaterial. The letter purported to expose allegations of sexual harassment and an ensuing cover-up by the Chief of Police. We find this to be a job-related matter notwithstanding Robbins' lack of formal authority. *See **Pewitt v. Buford***, C/A No. 01A01-9501-CV-00025, 1995 WL 614327 at *6 (Tenn. Ct. App. W.S., filed October 20, 1995) (finding a communication by a county trustee's office employee concerning criminal misconduct of the County Trustee to be for a job-related purpose within the meaning of the PEPFA).

The City next argues that, even if Robbins authored the letter for a job-related purpose, the PEPFA does not prohibit the City from terminating Robbins because the letter contained untrue allegations.

T.C.A. § 8-50-604 provides as follows:

> No provision of this part shall be construed to prohibit an employer from correcting or reprimanding an employee for making untrue allegations concerning any job-related matter to an elected public official.

The City argues that Robbins, out of an admitted desire to pursue a personal vendetta, communicated, as factually true, certain allegations of sexual misconduct of which he had no personal knowledge, embellished those allegations with falsehoods, and falsely accused city officials of a cover-up.

Robbins argues that the content of the letter is substantially true, *i.e.*, that the allegations as made by the secretary are true and that the inaccuracies characterized as embellishments by the City are conclusions that Robbins reasonably inferred from the information relayed to him by the secretary. He also argues that his assertion that the matter was being "swept under the carpet" is substantially true because the only consequence of the sexual harassment complaint was that Lukianoff was transferred to another building. Robbins asserts that because the content of his letter is substantially true, he cannot be disciplined under T.C.A. § 5-80-604 for making untrue allegations. He contends that the letter should be viewed according to a defamation-type standard, *i.e.*, that he should not be disciplined unless he knew the allegations were untrue or acted with reckless disregard for whether they were true. *See* ***Press, Inc. v. Verran***, 569 S.W.2d 435, 442 (Tenn. 1978) (adopting the Restatement (Second) of Torts § 580A relating to defamation of public officials and requiring that the defendant either knows the statement made is false and that it defames the other person or acts in reckless disregard of these matters).

We agree with the City. This case is governed by the provisions of the PEPFA. The City cannot discipline Robbins for communicating with the City Commissioners for a job-related purpose under T.C.A. §§ 8-50-602(a) and -603. The City is not, however, prohibited from disciplining him for communicating untrue allegations. Thus, the primary issue is whether the allegations contained in the letter are true. The standard by which those allegations are to be judged is found in the statute itself, which states simply that the City may discipline Robbins "for making untrue allegations." The unanimous decision of the Commission to sustain the City's termination of Robbins makes clear that they found the allegations to be untrue. That Robbins may have believed them to be true, or that a reasonable person may have believed them to be true, is not the issue. This is not a defamation case; it is a case governed by the provisions of the PEPFA. We find no violation of the PEPFA.

V.

The City's next two arguments are (1) that the Commission's decision was not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; and (2) that the decision was supported by evidence which is both substantial and material. These two arguments have much in common, and we will treat them together.

As stated previously, T.C.A. § 4-5-322(h) (1998) provides, in pertinent part, as follows

> [a] court may reverse or modify the decision [of an agency] if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> *   *   *
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

We recently discussed appellate court review pursuant to T.C.A. § 4-5-322 in the case of *Willamette Industries, Inc. v. Tennessee Assessment Appeals Commission*, 11 S.W.3d 142 (Tenn. Ct. App. 1999) *perm. app. denied* February 7, 2000, an opinion that was recommended for publication by the Supreme Court:

[W]e will not substitute our judgment regarding the weight of the evidence for that of the agency, even where the evidence could support a different result.

Stated another way, [a]n agency's factual determination should be upheld if there exists such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.

*Id*. at 147 (citations and quotation marks omitted).

The City argues that the trial court erred in substituting its judgment for that of the Commission concerning the weight of the evidence. It asserts that the Commission's decision was supported by substantial and material evidence and that it was not arbitrary, capricious, or an abuse or unwarranted exercise of discretion.

We agree. As stated previously, the Commission's unanimous decision to sustain the City's action in terminating Robbins indicates that it believed the allegations to be untrue. There is substantial and material evidence to support this finding. Robbins' assertion in the letter that Lukianoff "often tried to kiss [the secretary]" was contradicted by the bulk of the evidence, which showed that he only attempted to kiss her once. Though Robbins alleged in the letter that the secretary saw Lukianoff masturbating, she testified that she did not see this and that she never said she did. The testimony of other agents corroborated that she never told them she saw Lukianoff masturbating. In addition, there is substantial and material evidence in the record that Robbins' allegations that the harassment was being covered up were untrue. Once the secretary complained to her supervisor, Chief of Police Street met with her within the week and encouraged her to file a complaint, which she declined to do. Street then questioned Lukianoff about the allegations, and he denied them. Street discussed the situation with Internal Affairs and Human Resources, and the decision was made to transfer Lukianoff to another building because, without a formal complaint, they had no basis upon which to move against him.

There is substantial and material evidence in the record to support the Commission's decision to sustain the City's termination of Robbins. We accordingly find and hold that the trial court erred in substituting its judgment for that of the Commission.

VI.

In view of our decision in this case, we do not find it necessary to address Robbins' issue.

VII.

The judgment of the trial court is reversed. The case is remanded for such further proceedings as may be required, consistent with this opinion. Costs on appeal are taxed to the appellee, Larry Robbins.

_____
CHARLES D. SUSANO, JR., JUDGE